■ COMMISSIONERS OF THE STATE INSURANCE FUND, Appellants, v. MELVIN SCHELL et al., Respondents.— Order, entered May 19, 1964, denying plaintiffs' motion for summary judgment in an action to enforce a lien of $877.50 created by section 227 of the Workmen's Compensation Law, reversed, on the law, and summary judgment for plaintiffs against defendants Gorman and Columbia Casualty Company is granted, with $30 costs and disbursements to plaintiffs-appellants. Plaintiffs Commissioners made payments to or for Schell for disability for the period from October 31, 1959 to April 30, 1960 for three successive claimed disabilities: vental hernia with indigestion, first treated in 1957, but which became disabling on or about October 16, 1959; subluxation of cervical vertebrae, arising out of an automobile accident on December 21, 1959; and mental illness, for which he was first treated on January 22, 1960. Plaintiffs Commissioners sue to recover payments made by them to Schell subsequent to the automobile accident. 'The complaint and bill of particulars signed by defendant Gorman as Schell's attorney in the automobile negligence action brought by Schell against the Burwells establish that the proceeds of settlement of that action were received by Gorman from the Casualty Company, the Burwells' liability insurer, for permanent injuries consisting of subluxation of cervical vertebrae, severe shock to his nervous system and aggravation of a chronic stomach condition. These are the very disabilities for which Schell recovered disability payments from plaintiffs and for which they are subrogated and have a lien under the statute on the proceeds of settlement of the negligence action. While the pleadings are not conclusive of the basis for the settlement, defendants offer no evidentiary facts to establish that the disability period for which plaintiffs insurers made payments was not a factor in producing the settlement. They argue only that they could not have proved causation for which the third party might be responsible. That may be. In this context it is not material, on the sparse evidence in this record, what caused the disabilities, but only whether Schell settled on the basis of such disabilities in his automobile negligence action. Judgment may be granted against defendant liability insurer and defendant Gorman without the necessity of making named defendant Schell a party by service of process. The fact that Schell may dispute plaintiffs' lien and claim all or part of the fund now held by Gorman does not make him a necessary party under CPLR 1001 (cf. *Ocean Acc. & Guar. Corp.* v. *Hooker Electrochem. Co.,* 240 N. Y. 37, 47; 31 N. Y. Jur., Insurance, § 1635, p. 541; see *Connecticut Fire Ins. Co.* v. *Erie Ry. Co.,* 73 N. Y. 399; *Jarka Corp.* v. *Fireman's Fund Ind. Co.,* 286 App. Div. 148, mot. for lv. to app. dsmd. 309 N. Y. 1033; but see *Oishei* v. *Pennsylvania R. R. Co.,* 101 App. Div. 473, where the claim against the third party was not liquidated). Concur — Botein, P. J., Breitel, Steuer and Staley, JJ.; Eager, J., dissents in

the following memorandum: I would affirm the order denying plaintiffs' motion for summary judgment. I agree with Special Term that, on the papers before the court, Schell, named as a party defendant, should have been served before the entertaining by the court of the motion for summary judgment. This is not a case where plaintiffs are seeking recovery of an item of property or a specific fund to which they have title. The fund held in escrow belongs to Schell and plaintiffs merely claim to possess a lien which is disputed, at least in part. In my opinion, Schell was a person " who ought to be [a party] if complete relief is to be accorded between the persons who are parties to the action " and one " who might be inequitably affected by a judgment in the action ", and, therefore, he was a required party. (See CPLR 1001; see, also, *Oishei* v. *Pennsylvania R. R. Co.*, 101 App. Div. 473, 475; *Steinbach* v. *Prudential Ins. Co.*, 172 N. Y. 471, 478; *Morgan* v. *Onassis*, 5 N Y 2d 732, 734; *Oishei* v. *Metropolitan St. Ry. Co.*, 110 App. Div. 709, 712.) The decisions cited by the majority are readily distinguishable in that they involve instances where the attorney was properly held directly liable for acts tending to destroy or render ineffectual the plaintiffs' lien, as, for instance, for the disbursement of the fund after notice. Here, the plaintiffs do, allege that " the defendants have retained the sum of $877.50 for their benefits " but such allegation is not supported. There is no showing that the defendants have misappropriated the sum. It is conceded that they hold the sum subject to plaintiffs' lien. Schell is a party who should be joined not only for the purpose of determining the validity and extent of plaintiffs' lien but also to avoid the subjecting of the escrow agent to liability for double payment. The plaintiffs named Schell as a party to the action, so this is not a case where the defendants would be expected to interplead him. Furthermore, the failure to serve him is not explained, so joinder may not be excused. (Cf. CPLR 1001, subd. [b].) Finally, there are issues of fact precluding the proper granting of summary judgment to plaintiffs. It is their contention " that if they paid benefits [to Schell] for a disability caused by the December 21, 1959 accident, the lien attaches for the benefits paid." Concededly, Schell was receiving disability payments continually for a time immediately prior to and on December 21, 1959, the day of the automobile accident. The plaintiffs continued the disability payments after the accident. From the medical reports produced from plaintiffs' files, it appears that thereafter and for about a month only, the payments were continued on the basis of a disability arising from the injuries sustained in the accident, but on January 22, 1960, Schell was committed to a State hospital, and on February 9, 1960, a staff doctor filed a report with the plaintiffs certifying as to Schell's disability, giving a diagnosis as " Mental Illness. a. Claimant's Symptoms: Auditory hallucinations, ideas of persecution, nervousness, insomnia, excessive drinking. b. Objective findings: None." This was coupled with the statement that, beginning January 22, 1960, Schell was unable to work " because of this disability ". Thereafter, the disability payments were made by check drawn to order of " U. Schutzer, M. D. AC Melvin Schell, Binghamton State Hospital, Binghamton, New York." A total of $652.50 of the $877.50 claimed by plaintiffs was paid not to Schell but to the director of the State hospital for the alleged account of Schell and, on the basis of the medical report of the staff doctor of the hospital, the payments were made for disability due to the alleged mental illness of Schell. In view of the foregoing, the claim in Schell's bill of particulars is not conclusive as to the cause of his disability after January 22, 1960. It is to be noted that, in the bill, he made claim for hospital confinement due to the accident for a period to January 5, 1960 and claimed confinement to his home only for " the greater part of the time for the period of

one month". The mere general claim in the bill of serious permanent injuries from the automobile accident and loss of earnings by virtue thereof, though relevant to the issues, may not in the record here be accepted as irrefutable proof precluding a trial of the issues. If, as appears from the files of the plaintiffs, the disability payments from January 22, 1960, were on account of mental illness, unconnected with the accident, the plaintiffs, on the basis of their construction of the statute have no lien for the payments after such date.